UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
GREAT NORTHERN INSURANCE
COMPANY, as a subrogee of
Arunesh Hari and Ranjana Hari,

    Plaintiff,

       - against –

ALBERT LABOZ, M&R CONSTRUCTION
GROUP, INC., and ALBA SERVICES
INC.

    Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

20 Civ. 9168

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

In 2018, defendant Albert Laboz ("Laboz") undertook an extensive renovation of his unit in a cooperative residential building located at 857 Fifth Avenue, New York, New York 10065 (the "Co-Op").[1]  For this project, Laboz hired defendant M&R Construction ("M&R") as the general contractor, which, in turn, hired defendant Alba Services, Inc. ("Alba") as the demolition subcontractor.  Each of these parties had identical indemnification agreements cascading down from Laboz to Alba under which Laboz was indemnified from any damage caused "in whole or in part by" M&R's or Alba's negligence, and M&R was indemnified from

---

[1] These facts are drawn from the Court's prior Memorandum and Order, which more fully sets forth the background of this case.  ECF No. 146 (the "Order").

any damage caused "in whole or in part by" Alba's negligence. Order at 5-6.

During the demolition phase of the renovation project, one of Alba's assignments was to open the wall between the bar and the powder room so that isolation valves could be installed on the water riser located behind that wall.  Alba's foreman, who was supervising the project for Alba, testified that on the morning of June 28, 2018, he instructed Alba employee Valente Oropeza "to remove the plaster and lath[]" on that wall and expose the pipes located inside.  Order at 9.  He further explained that both he and Mr. Oropeza were "aware" that the Co-Op's water had not been shut off and thus the riser in the wall was "live."  Id.  Mr. Oropeza was working alone on the wall until about 11:15 a.m., when a water pipe within the wall broke and began spewing water throughout the unit.  According to Alba's contemporaneous report, "[w]hile removing mesh from partitioning wall between the Bar and the Powder room[,] a pipe was struck and began spilling water." Id. at 10 (emphasis added).  Numerous potential witnesses and experts corroborated that Alba struck the pipe during the demolition and caused it to break, and a photograph submitted by the parties shows the pipe was in fact dented.  See id. at 10-11. The resulting water damage was extensive and caused about $1.3

million in damage to a unit several floors below that was insured by plaintiff Great Northern Insurance Company ("plaintiff").  Id. at 12.

On November 2, 2020, plaintiff filed the instant action against Laboz, M&R, and Alba (collectively, "defendants").  ECF No. 1.  In 2023, at the conclusion of a lengthy discovery process, the parties filed a series of motions and cross-motions for summary judgment, namely: (1) plaintiff's motion on its contract claim against Laboz; (2) Laboz's cross-motion seeking to dismiss both plaintiff's claims against him; (3) Laboz's motion on his indemnification cross claims against M&R and Alba; and (4) M&R's motion for conditional summary judgment against Alba.  See ECF Nos. 81-134.  On February 20, 2024, this Court entered a Memorandum and Order: (1) denying plaintiff's motion against Laboz; (2) granting Laboz's cross-motion against plaintiff; (3) granting Laboz's motion against M&R and Alba; and (4) granting M&R's motion against Alba.  See Order at 35.  To resolve the latter two motions, the Court was only required to find that Alba was at least partially negligent in causing the pipe to break -- a finding that the Court concluded was amply supported by the undisputed facts.

-3-

On March 12, 2024, Alba filed a motion for reconsideration of that negligence determination.[2]   ECF Nos. 152-54.   The other parties -- plaintiff, Laboz, and M&R -- each filed separate oppositions to Alba's motion.[3]   ECF Nos. 156, 158, 160.   For the reasons discussed below, Alba provides no basis for the Court to reconsider its prior decision and therefore Alba's motion is denied.

## DISCUSSION

**A. Legal Standards**

Reconsideration of a prior decision is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."   In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal quotation marks omitted).   A motion for reconsideration may not be used to introduce evidence that could have been

---

[2] Rule 6.3 of the Local Civil Rules for this District provides that "a notice of motion for reconsideration . . . of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion."   Local R. 6.3.   Here, Alba filed its motion for reconsideration twenty-one (21) days after the Court's Order, and did not seek an extension of the deadline from the Court.   While the Court could dismiss Alba's motion on that basis alone, see Luv N' Care, Ltd. v. Regent Baby Prods. Corp., 986 F. Supp. 2d 400, 411 (S.D.N.Y. Jan. 23, 2014) (denying as untimely motion for reconsideration filed fifteen days after the Court's initial order), none of the other parties raised the issue and thus we will consider Alba's motion on the merits.
[3] Alba did not file a reply brief.

presented in the original motion, "relitigat[e] old issues, present[ ] the case under new theories, secur[e] a rehearing on the merits, or otherwise tak[e] a second bite at the apple." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012) (internal quotation marks omitted).  In other words, a motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." Simon v. Smith & Nephew, Inc., 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014), aff'd, 663 F. App'x 71 (2d Cir. 2016).

Accordingly, "[t]he standard for granting [motions for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995), or "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).  Ultimately, whether to reconsider a decision is "committed to the sound

discretion of the district court." <u>Marotte v. City of New York</u>,
No. 16 Civ. 8953 (GHW), 2017 WL 11105223, at *1 (S.D.N.Y. Oct. 6,
2017).

## B. Application

In its motion for reconsideration, Alba argues that it was
premature for the Court to conclude that Alba was at least
partially negligent in causing the pipe to break.  The Court
struggles to understand the legal logic of this position in light
of the undisputed facts that (1) Alba was specifically tasked with
opening up the relevant wall; (2) Alba knew there was a water pipe
behind that wall; (3) Alba knew the pipe was live; and (4) only an
Alba employee struck the pipe, which caused it to break.  Although
at this stage Alba was held only <u>partially</u> liable given the nature
of the motions before us, Alba's efforts to claim that there are
triable issues related to its liability -- now as before -- fail
totally.  Contrary to Alba's arguments for reconsideration, a
triable issue cannot be based on the legal conclusions of
witnesses, the type of tool Alba was using, or purported
preexisting defects with the pipe itself.  At bottom, Alba cannot
escape the fact that an Alba employee, working on his own, struck
the pipe, which he knew was live, causing it to break.  For this
reason, Alba does not even attempt to shift responsibility onto

another party, and its excuses to avoid liability despite being the sole and active tortfeasor remain entirely unpersuasive.

Alba first argues that the Court ignored certain evidence favorable to Alba, the non-moving party, in contravention of the summary judgment standard.   ECF No.  154 ("Mot.")  at 6. Specifically, Alba claims that the Court failed to consider the testimony of the M&R Supervisor and Alba's own expert concluding that, in their opinion, Alba was not negligent in demolishing the wall in question.  Mot. at 8-9.  Alba's argument is without legal basis.  If the legal conclusions of witnesses were sufficient to raise an issue of fact, as Alba suggests, then summary judgment could always be defeated by a single witness' declaration that the non-moving party did nothing wrong.  Of course, that is not the law, for it is well established that witness testimony expressing a legal conclusion must be disregarded.  See, e.g., Nachimovsky v. Nike, 19 Civ. 2120 (ILG)(RER), 2022 WL 943421, at *6 (E.D.N.Y. Mar. 29, 2022) (disregarding portions of a witness affidavit that contained "impermissible legal conclusions, such as its description of the [relevant product] as 'negligently designed'"); see also Cameron v. City of New York, 598 F.3d 50, 62 (2d Cir. 2010) ("[W]itnesses may not present testimony in the form of legal conclusions.") (internal quotation marks omitted)).  Therefore, in

discounting the legal conclusions advanced by the M&R Supervisor and Alba's expert, the Court was simply adhering to longstanding precedent that Alba fails to acknowledge.

Alba further argues that the Court ignored testimony of the M&R Supervisor that Alba used the proper tools in conducting its demolition work. See Mot. at 8. But this self-serving assertion, even accepting its truth, had no bearing whatsoever on the Court's negligence determination. In other words, whether Alba used a hammer, sledgehammer, or some other tool is entirely beside the point. As the Court made absolutely clear in its Order, Alba was found partially negligent because (1) Alba was specifically assigned the task of opening up the wall; (2) Alba knew there was a pipe behind that wall; (3) Alba knew the pipe was live; and (4) an Alba employee, working alone, struck the pipe during that process causing it to break. That Alba used the "proper tools" does not call into question any of the foregoing facts that led to the Court's negligence determination, and therefore, the M&R Supervisor's testimony does not undermine our initial conclusion.

Alba's second overarching argument for reconsideration is that the Court ignored its contentions that Alba was not negligent because (1) the pipe was improperly soldered; and (2) the pipe was improperly embedded into the wire lath. Mot. at 9-11. To start,

the Court has already squarely rejected Alba's improper soldering argument.  See Simon, 18 F. Supp. 3d at 425 (stating that a motion for reconsideration is "n[ot] an occasion for repeating old arguments previously rejected").  Nevertheless, to avoid any doubt, the Court will take this opportunity to explain again why Alba's theory is fatally flawed.

Alba essentially argues that it cannot be held liable because the pipe was improperly soldered and would not have come apart had it been properly soldered when it was first installed decades earlier.  Mot. at 8.  However, in advancing this argument once again, Alba still fails to grapple with the fundamental precept that "[t]he causation rule in tort law . . . is that an accident which produces injury by precipitating the development of a latent condition or by aggravating a preexisting condition is a cause of that injury."  Matter of Tobin v. Steisel, 64 N.Y.2d 254, 259 (1985); see also Gayle v. City of New York, 92 N.Y.2d 936, 937 (1998) (holding that a plaintiff "need only prove that it was 'more likely' or 'more reasonable' that the alleged injury was caused by the defendant's negligence than by some other agency");[4] cf.

---

[4] Alba's attempts to distinguish Gayle on the facts are unpersuasive.  Mot. at 12.  The Court only relied on Gayle for its hornbook restatements of the proximate cause standard, and therefore the specific facts of the case are irrelevant.

<u>Petroterminal De Panama, S.A. v. QBE Marine & Specialty Syndicate</u>
<u>1036</u>, 14 Civ. 8614, 2017 WL 253066, at *4 (S.D.N.Y. Jan. 19, 2017)
("To determine cause in the insurance context, New York courts
must determine the efficient or dominant cause of the loss, not
the event that merely set the stage for the later event." (internal
quotation marks omitted)).

It is this basic principle that dooms Alba's improper
soldering argument.  As the Court explained in its original Order,
the evidence clearly and convincingly establishes that Alba struck
the pipe and that this directly caused it to break.  There is no
dispute that the pipe, even assuming it had been imperfectly
soldered, remained functional and intact for approximately fifty
years before Alba struck it.  Numerous potential witnesses and
experts testified that the pipe broke when Alba hit it during
demolition, and, in fact, Alba's own contemporaneous report admits
that "a pipe was struck and began spilling water."  Order at 10.
Alba has cited no evidence, at any point, to dispute this critical
fact.  Indeed, even Alba's own expert acknowledges that the pipe
was dented, and although he leaves open the possibility that the
dent resulted from "post-incident extraction," such speculation is
simply insufficient to create a genuine dispute of fact where all
other evidence, including Alba's own admission, conclusively shows

-10-

that Alba in fact struck the pipe causing it to break.[5]  See Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001) (explaining that a nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" to survive summary judgment (internal quotation marks omitted)).  As such, even if the pipe had been improperly soldered, that would be, at best, a preexisting defect that was exacerbated (significantly) when Alba struck the pipe during demolition, which, under basic tort law, does not absolve Alba from liability.  The only common-sense conclusion to be drawn is that Alba was the direct and proximate cause of the break, and for this reason, the Court has no trouble concluding once more that Alba's improper soldering argument does not disturb our negligence determination.

Alba's argument that the pipe was improperly embedded in the wire lath is even less persuasive than its soldering argument. Alba contends that it "could not have known that a pipe was embedded into the wire lath[]" and that "a defendant cannot be held liable when the defect is latent and would not be discoverable upon a reasonable inspection."  Mot. at 10.  However, the

---

[5] Alba claims that the Court erred in granting summary judgment in the face of "conflicting expert reports."  Mot. at 11.  However, there was no such conflict because, as discussed above, Alba's expert did nothing to dispute the specific but all-important finding of the several other experts that Alba hit the pipe and caused it to break.

undisputed evidence directly belies Alba's claim.  As our original Order noted, both Superintendent McGurl and the M&R Supervisor -- whose testimony Alba otherwise relies heavily upon -- agreed that the piping was "clearly visible stubbed out of [the] wall" between the bar and the powder room.  Order at 30.  Even on reconsideration, Alba fails to cite any evidence to dispute this fact, which demonstrates that the pipe's positioning in the wall was hardly a "latent" condition that was undiscoverable "upon a reasonable inspection."  Mot. at 10.  Accordingly, the Court rejects this argument as grounds for reconsideration.[6]

**CONCLUSION**

In sum, Alba offers no justifiable reason for the Court to reconsider its prior decision.  If anything, Alba's motion only serves to further corroborate our original conclusion that Alba was -- at the <u>very</u> least -- negligent in causing the damage at issue here.  It was Alba's job to open the relevant wall, Alba knew there was a pipe behind that wall, Alba knew that pipe was

---

[6] Alba also suggests that the Court arrived at its initial decision merely by counting the number of witnesses on either side and adopting the theory with the most witnesses supporting that theory.  Mot. at 11.  This suggestion is meritless.  In fact, the Court thoroughly combed a voluminous record, waded through scores of briefs (including several of Alba's that were plainly unauthorized), and found nothing to call into question the simple fact that Alba struck the pipe and caused it to break.  Alba may think that the law is a numbers game, but there is absolutely no basis to suggest that the Court shares that viewpoint.

-12-

live, and Alba made contact with the pipe.  Tellingly, Alba does
not even attempt to shift liability onto any other party, and its
excuses to avoid liability have no basis in law or fact, even upon
reconsideration.  For the foregoing reasons, the Court denies
Alba's motion and respectfully directs the Clerk of Court to
terminate the motions pending at 148 and 152.


**SO ORDERED.**

Dated:    New York, New York
          April 17, 2024

                                        _____
                                           NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE


-13-